## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LA'KEYA KEO, : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 24-CV-6639 |
| : | |
| LANCASTER BEHAVIORAL : | |
| HEALTH HOSPITAL, : | |
|     Defendant. : | |

### MEMORANDUM

**GALLAGHER, J.**                                                                                                       **MARCH 17, 2025**

      Currently before the Court is a Complaint filed by Plaintiff La'Keya Keo against Lancaster Behavioral Health Hospital (the "Hospital"), raising claims under federal and state law based on events that occurred while she was admitted to the Hospital.[1] (ECF No. 1.) Keo seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Keo leave to proceed *in forma pauperis* and dismiss her Complaint.

### I.    FACTUAL ALLEGATIONS[2]

      Keo alleges that on February 20, 2024, she was admitted to the Hospital "against [her] will." (Compl. at 3.) She alleges that she was in the emergency room for hip pain "filled with staff and security" who forced and restrained her "if [she] did not get on the stretcher." (*Id.*) She asked why the Emergency Medical Services was taking her to "the shelter," and "they stated, . . . you are going to Lancaster Behavioral Health Hospital." (*Id.*) She alleges that "[t]hey had no

---

[1] Keo initiated this action in the Middle District of Pennsylvania, and the case was transferred to this District based on venue. *See* 28 U.S.C. §§ 118(a), 1391(b), and 1406(a).

[2] The factual allegations are taken from the Complaint ("Compl") (ECF No. 1) and assumed to be true for purposes of this Memorandum. The Court adopts the sequential pagination assigned by the CM/ECF docketing system.

right to do this" to her, and she was "very vulnerable and forced against [her] will," even though she was "not aggressive, indecisive, outrageous, or over-critical at all." (*Id.*) While at the Hospital, Keo alleges she was "a victim of cybercrimes," was assaulted by another patient, "a male staff (Chris) member forced his way and stood in [her] bathroom with [her]," and "hidden cameras" were in the room. (*Id.* at 2.) She "suffered harmful physical body attacks lasering [her]" and privacy rights violations. (*Id.*) As a result of her admission in the Hospital for eight months, she claims she was harassed and discriminated against as the "only African [A]merican [E]nglish Muslim female" based on her race, color, gender, religion, national origin, age, disability, and for retaliation. (*Id.* at 3-4.) Keo seeks money damages. (*Id.* at 2.)

## II.    STANDARD OF REVIEW

The Court grants Keo leave to proceed *in forma pauperis* because it appears that she does not have the ability to pre-pay the fees to commence this case. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)), *abrogation on other grounds recognized by Fisher v.*

*Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Keo is proceeding *pro se*, the Court construes her allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*

Furthermore, the Court must dismiss any claims over which it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence."). The Court's continuing obligation to assure its jurisdiction includes an assessment of whether a case has become moot.  *See Seneca Res. Corp. v. Twp. of Highland, Elk Cty., Pa.*, 863 F.3d 245, 252 (3d Cir. 2017) ("Our 'continuing obligation' to assure that we have jurisdiction requires that we raise issues of standing and mootness sua sponte.").

### III.     DISCUSSION

#### A.  Involuntary Commitment Claims

3

Keo's claims against the Hospital for alleged violations of her constitutional rights are best understood as arising from her involuntary commitment to the Hospital under Pennsylvania's Mental Health Procedures Act ("MHPA").[3] *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name."). The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. Involuntary civil commitment constitutes a serious deprivation of liberty, and a person may bring a federal civil rights action where the deprivation is achieved by unconstitutional means. *Marcavage v. Bd. of Trs. of Temple U. of Commw. Sys. of Higher Educ.*, No. 00-5362, 2004 WL 1151835, at *4 (E.D. Pa. May 21, 2004) (citation omitted), *aff'd sub nom.*, 232 F. App'x. 79 (3d Cir. 2007). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Whether a defendant is acting under color of state law—i.e., whether the defendant is a state actor—depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the Third Circuit has]

---

[3] The purpose of the MHPA, 50 Pa. Stat. and Cons. Stat § 7301 *et seq.*, is "to assure the availability of adequate treatment to persons who are mentally ill, and . . . to establish procedures whereby this policy can be effected." *Id.* § 7102. The MHPA permits the involuntary commitment of persons who constitute a "clear and present danger" to themselves or others. *Id.* § 7301(a). Section 301(b) provides guidance to determine what constitutes a "clear and present danger" warranting immediate emergency care. *See id.* at § 7301(b). Section 302 allows involuntary commitment of a person for emergency psychiatric examination for up to 120 hours, where "reasonable grounds [exist] to believe that [the person] is severely mentally disabled and in need of immediate treatment." *Id.* at § 7302(a). Involuntary treatment pursuant to this section may be obtained with or without a warrant. *See id.* § 7302(a)(1)-(2). The duration of involuntary treatment may be extended in certain circumstances. *Id.* § 7302(d).

outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Rather, to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Notably, in the context of commitments under the MPHA, "courts have held that private health care facilities and physicians acting under the provisions of the MHPA are not state actors for purposes of Section 1983." *Little v. Outlaw,* No. 24-CV-4033, 2025 WL 581164, at *7 (E.D. Pa. Feb. 20, 2025) (quoting *Covell v. Smith*, No. 95-0501, 1996 WL 750033, at *6 (E.D. Pa. Dec. 30, 1996) (collecting cases)).

Since the Hospital appears to be a private health care facility acting under the provisions of the MHPA, and nothing in the Complaint suggests otherwise, § 1983 is inapplicable here. *See, e.g.*, *Benn v. Universal Health Sys., Inc.,* 371 F.3d 165, 173 (3d Cir. 2004) (holding that persons who petition for the involuntary commitment of others are not state actors); *Covell,* 1996 WL 750033, at *6 (finding doctor acting under MHPA not a state actor); *Janicsko v. Pellman*, 774 F. Supp. 331, 338-39 (M.D. Pa. 1991) (finding that private hospital and physicians were not

state actors acting under MHPA), *aff'd*, 970 F.2d 899 (3d Cir. 1992).  Accordingly, the Court will dismiss Keo's constitutional claims based on her involuntary commitment.

### B. Disability Discrimination Claims

Keo next asserts damages claims for discrimination based on a disability.  (*See* Compl. at 4.)  These claims are best analyzed under Title III of the Americans with Disabilities Act ("ADA"), which prohibits places of public accommodation from discriminating against individuals with disabilities in connection with goods, services, facilities, privileges, advantages or accommodations.  *See* 42 U.S.C. § 12182(a).  To state a claim under Title III of the ADA, a plaintiff must plausibly allege that:  (1) she has a disability; (2) the defendant is a public accommodation within the meaning of the statue; and (3) she was denied goods, services, facilities, privileges, advantages or accommodations due to discrimination based on her disability, which can include failure to reasonably accommodate her disability.  *See Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 175 (3d Cir. 2019); *Douris v. Dougherty*, 192 F. Supp. 2d 358, 368 (E.D. Pa. 2002).

A plaintiff is disabled for purposes of the ADA if she (1) has a "physical or mental impairment that substantially limits one or more" of her "major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." *Eshleman v. Patrick Indus., Inc*., 961 F.3d 242, 245 (3d Cir. 2020) (citing 42 U.S.C. § 12102(1)).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).  Public accommodations include, for example, grocery stores, banks, shopping centers or other service establishments that affect commerce.  *See* 42 U.S.C. § 12181(7)(E)-(F).  *Only injunctive*

*relief* is available to a private plaintiff suing under Title III of the ADA. 42 U.S.C. § 12188(a) (emphasis added); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 433 (3d Cir. 2003) ("Title III defendants cannot be liable for money damages."); *see also Abadi v. Target Corp.*, No. 23-1050, 2023 WL 4045373, at *2 (3d Cir. June 16, 2023) ("Title III of the ADA, which prohibits discrimination on the basis of disability in public accommodations, only provides for injunctive relief." (citation omitted)).

As an initial matter, Keo's Complaint fails to state a claim under the ADA because she has not described her disability with any specificity. She simply titled a section in her Complaint as "Discrimination based on," then states, "Disability – yes." (Compl. at 4.) Regardless, even if she had properly alleged that she has a disability as defined under the ADA, the relief she seeks (money damages) is unavailable to her under the relevant statutory framework. Accordingly, the Court will dismiss Keo's ADA claims.

### C. Other Discrimination Claims

Keo alleges she was discriminated against as the "only African [A]merican [E]nglish Muslim female" based on her race, color, gender, religion, national origin, age, and for retaliation.[4] (Compl. at 3-4.) Title II of the Civil Rights Act of 1964 is the most relevant legal source for these claims. Title II prohibits race, color, religion, or national origin discrimination in the "enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation." 42 U.S.C. § 2000a(a)-(b). However, "Title II of the Civil Rights Act of 1964 allows only claims for injunctive relief, not those seeking damages."

---

[4] The Court is unable to discern any viable civil rights claims for retaliation or discrimination based on gender and age.

*Goode v. U.S. Dep't of Homeland Sec.,* 815 F. App'x 643, 645 (3d Cir. 2020) (citing *Newman v. Piggie Park Enters. Inc.,* 390 U.S. 400, 402 (1968) and 42 U.S.C. § 2000a-3(a)).

These claims are conclusory and undeveloped. Keo fails to state even one factual allegation that ties her membership in these classes to her treatment at the Hospital. Regardless, since Keo only seeks money damages here, which she cannot recover under Title II, these claims must be dismissed.

**D.  State Law Claims**

Having dismissed all of Keo's federal claims, the Court concludes it lacks jurisdiction over any remaining claims, which are best construed as state law claims for invasion of privacy,[5] assault, and negligence. District courts may exercise jurisdiction over cases raising claims exclusively under state law if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). "Complete diversity requires that, in cases with multiple plaintiffs or multiple

---

[5] It is difficult to discern what claims Keo intended to bring as it relates to her allegations of cybercrimes and violation of privacy. Keo's reference to the violation of her privacy appears to be related to her allegations that hidden cameras were in her room, which is best construed as a tort claim for invasion of privacy. To the extent she also intended to bring a federal claim for violation of the Health Insurance Portability and Accountability Act ("HIPAA") against the Hospital, there is no federal private right of action under HIPAA. *See Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007); *Acara v. Banks*, 470 F.3d 569 (5th Cir. 2006); *Altavilla v. Geisinger Wyoming Valley Med. Ctr.,* No. 17-1704, 2018 WL 1630961, at *2 (M.D. Pa. Mar. 12, 2018), *report and recommendation adopted*, 2018 WL 1629870 (M.D. Pa. Apr. 4, 2018) ("'The ability to bring an enforcement action to remedy HIPAA violations, and ensure that a healthcare provider is HIPAA compliant, lies within the exclusive province of the Secretary of Health and Human Services, not the hands of private citizens.'" (quoting *Polanco v. Omnicell,* Inc., 988 F. Supp. 2d 451, 469 (D.N.J. 2013)). *See also, Cobb v. PrimeCare Med. Corp*., No. 18-1516, 2020 WL 13729620, at *6 (M.D. Pa. Jan. 29, 2020) (citations omitted), *report and recommendation adopted*, 2020 WL 13730063 (Feb. 24, 2020) (stating that HIPAA "does not create a private right of action for alleged disclosures of confidential medical information. . . . Therefore, neither [HIPAA] nor 42 U.S.C. § 1983 supports an action based on HIPPA violations.") (internal quotation omitted).

defendants, no plaintiff be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). For diversity purposes, an individual is a citizen of the state where she is domiciled, meaning the state where she is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). Residence alone is insufficient to establish domicile. *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972) ("The fact of residency must be coupled with a finding of intent to remain indefinitely."). A corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business. *See* 28 U.S.C. § 1332(c). In contrast, "the citizenship of an LLC [or other unincorporated entity] is determined by the citizenship of its members." *Zambelli*, 592 F.3d at 420.

In her Complaint, Keo lists a Pennsylvania address for both herself and the Hospital. (*See* Compl. at 1.) Since it appears that Keo and the Hospital may both be Pennsylvania citizens, diversity is lacking. Accordingly, the Court will dismiss the remaining state law claims for lack of subject matter jurisdiction. This dismissal will be without prejudice, so Keo can file these claims in the appropriate state court if she chooses to do so. The Court expresses no opinion on the merits of any such lawsuit.

### IV.    CONCLUSION

For the foregoing reasons, the Court will grant Keo leave to proceed *in forma pauperis*, dismiss her federal claims for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and dismiss any state law claims without prejudice for lack of subject matter jurisdiction. The Court concludes that under the circumstances of this case, Keo cannot cure the defects in her Complaint, so she will not be given leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d

103, 108, 110 (3d Cir. 2002) (stating that complaints should be with leave to amend "unless amendment would be inequitable or futile").

An appropriate Order will be entered separately. *See* Federal Rule of Civil Procedure 58(a).

**BY THE COURT:**

*/s/ John M. Gallagher*
**JOHN M. GALLAGHER, J.**